Shauck, J.
The courts below have concluded that the statute, upon which the plaintiff relied to relieve it from the burden of proving the fraud which it had alleged, is unconstitutional. On behalf of the defendant it is insisted that that judgment is fully sustained by our decision in Miller v. Crawford, 70 Ohio St., 214. Counsel' for the plaintiff in error call attention to manifest differences between this statute and its predecessor, which was denounced as unconstitutional in the case cited. The statute denounced in that case apparently gave no consideration either to the nature of legislative power or to the limitations which are placed upon its exercise. In that case it was pointed out that in view of the intricate provisions of the act sales in compliance with it would, in many cases, be entirely impracticable, and that the statute in effect would amount to a prohibition of such sales. The terms of the present *342 statute go no farther than to create a presumption that a sale in bulk, without giving the prescribed notice, is fraudulent, only placing upon the parties to the transaction, the burden of which vendors and purchasers are relieved in all other cases of proving a sale free from fraud. The statute does not define the character of the presumption intended by the act, whether it shall be prima facie or conclusive. If the difference is material in the present inquiry, as counsel seem to regard it, we should, in deference to the familiar doctrine that if of two permissible interpretations one would render a statute unconstitutional and the other would not, the latter should be adopted, accept the statement of plaintiffs'’ counsel as correctly defining the character and scope of the presumption intended: “The provisions of Section 6343, Revised Statutes, that certain sales 'shall be presumed to be made with intent to hinder, delay or defraud creditors/ unless notice is filed as thereinafter provided, creates a rule of evidence. It renders admissible the fact that the vendor -has failed to file notice of a sale out of the ordinary course of business, as a fact from which the intent of the parties may be inferred, and places upon the defendant the burden of proceeding with evidence óf the actual intent after proof of the lack of notice has been introduced.” The question then is, whether the guarantees of the Constitution respecting the equal rights of all to the enjoyment and use of property includes or excludes the rules of evidence and the presumptions by whose application those rights are practically preserved and enforced. This question is quite apart from that *343 so much discusse’d in the briefs and cases cited respecting the power of the general assembly to establish rules of evidence by statutes of general and equal operation. It would seem that the distinction in this respect upon which counsel for plaintiff insist is quite inconsistent with the nature and scope of these constitutional guaranties as they are set forth in Miller v. Crawford. Without repetition of anything that is there said, it is quite convenient to quote a pertinent statement of the nature of those guaranties from a writer whose views are received with general respect: “If the legislature should undertake to provide that persons following some specified, lawful trade or employment, should not have capacity to make contracts, or to receive conveyances or to build such houses as others were allowed to erect, or in any way to make such use of their property as was permissible to others, it can scarcely be doubted that the act would transcend the due/ bounds of legislative power, even though no express constitutional provision could be pointed out with which it would come in conflict.” Cooley Const. Limitations. Although counsel point out the suggested differences between the provisions of the two statutes, they do not inform us of any difference in the constitutional view between a provision that a sale without compliance with the statute should be fraudulent absolutely, and one which upon the same condition shall be prima facie evidence that the sale is fraudulent, thus devolving upon the parties in the limited case to which the statute applies, a burden for the protection of their property rights of which all others are relieved. The *344 pertinent effect of the constitutional provisions referred to is to ordain equality of rights in property. In contemplation of this act, where the subject of the contract of sale is the limited property described by the terms of the act, the sale is to be presumed to be fraudulent, while in all other 'cases the sale is presumed to be unaffected by fraud. Counsel have not communicated to us any view upon which we could sustain the proposition that laws can be equal which accord to one, without proof, rights which they accord to others only upon proof.
Not placing ultimate reliance upon the suggested differences between the two statutes, counsel insist that there is a valid basis for discrimination to be found in the ease with which stocks of merchandise may be purchased upon credit and then sold and transferred to the prejudice of the original vendor. Careful attention to what has been said upon this point has failed to develop in our minds the perception of any difference in this respect between sales where the subject, upon one hand, is merchandise, and on the other, flocks, herds or machinery, or the capital stock of corporations, or any others of the large list of the subjects of property. The case in this respect does not differ from Miller v. Crawford, and it is not deemed necessary to add further to what was said in that case.
Finally, we are admonished that acts of the general assembly should not be adjudged unconstitutional upon doubtful considerations. Not since The State, ex rel. Knisely, v. Jones et al., 66 Ohio St., 453, has the admonition been urged upon our *345 attention with so much eloquence and impressiveness. Since the beginning of constitutional government, according to the American understanding of that phrase, the courts háve so admonished themselves, and the admonition has become an established rule of interpretation. It was founded upon the observation that members of the lawmaking department of the government take the same oath as do those of the judicial department to heed the provisions of the constitution, and the further observation that they were mindful of their oath. The rule continues as expressive of becoming deference to a coordinate department of the government. But nothing would be more fatal to the efficient exercise of the judicial function in constitutional government than to invoke, for the purpose of raising doubts, a rule devised for solving them. In that respect it is quite like the familiar rule respecting reasonable doubts as a test of the probative effect of evidence in criminal cases. He has been an inattentive student of the history of the state who thinks that public or private injury has resulted from a too devoted adherence to the provisions of the organic law. It seems to us that this act very plainly from its nature, takes its place among the enactments which constitute the promoted legislation of the state not suggested by comprehensive views of the rights and interests of all the people, but furthered by those who desire to obtain advantages not accorded by the general law.

Judgment affirmed.

Spear, C. J., Davis, Price, Johnson and Donahue, JJ., concur.